# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADVICE MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAG MUTUAL INSURANCE COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:25-cv-01107-AMA-JCB<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Jared C. Bennett |

This matter comes before the Court on Plaintiff Advice Media, LLC's Motion for Preliminary Injunction.[1] After reviewing the materials, the Court has concluded that a hearing on the Motion is not necessary.[2] For the reasons below, the Court will deny the Motion.

## BACKGROUND

Plaintiff Advice Media, LLC, d.b.a. MyAdvice ("Advice Media") is a technology and marketing company that provides an integrated AI-driven digital marketing platform and related services including website development, search optimization, digital advertising, content creation, and other related marketing solutions to individuals and businesses in a variety of industries.[3] Advice Media owns U.S. Trademark Registration Number 7,039,611 for the mark

---

[1] ECF No. 10, filed February 11, 2026.

[2] Under DUCivR 7-1(g), a request for oral argument on a motion will be granted only on good cause shown. Otherwise, "the court will determine a motion based upon the parties' written memoranda." DUCivR 7-1(g). Here, Defendant MAG Mutual Insurance Company ("MMIC") requested oral argument on the Motion, but the Court is not persuaded that oral argument would be beneficial to the Court nor productive for the parties at this juncture. Therefore, the Court finds no existing good cause to support the request for oral argument, and the request is denied.

[3] ECF No. 1 ¶ 13; ECF No. 35, Ex. A ¶ 10.

MYADVICE[4] covering various advertising and marketing services, marketing consulting services, and website optimization services in International Class 35 and "providing online non-downloadable videos in the field of digital marketing, online marketing, website development, brand management, and Internet presence" in International Class 41.[5] Advice Media's MYADVICE mark appears on the header of its website, a primary vehicle through which prospective purchasers engage with the company,[6] as follows:[7]



Advice Media has been using the mark since 2022, and it markets its services online and directly at industry conferences.[8]

Defendant MAG Mutual Insurance Company ("MMIC") is one of the nation's leading providers of medical professional liability insurance and has been in business for more than forty years, delivering comprehensive insurance coverage, advice, claims support, and financial benefits to more than 40,000 healthcare providers and organizations nationwide.[9] Around October 16, 2026, MMIC issued a press release announcing the introduction of "MyAdvice," a new risk consultancy and advice delivery platform designed to aid healthcare providers reduce

---

[4] While Advice Media includes several of its other trademark registrations in its Motion, it appears that the MYADVICE mark is the mark truly at issue here. Indeed, Advice Media's Reply is limited to discussion of the MYADVICE mark. Thus, the Court limits its inquiry to the MYADVICE mark.
[5] ECF No. 10, Ex. 1.
[6] ECF No. 35, Ex. A ¶ 25.
[7] ECF No. 32, Ex. A.
[8] ECF No. 35, Ex. A ¶¶ 4, 17, 24.
[9] ECF No. 19 at 11 ¶ 8.

malpractice exposure and improve patient outcomes.[10] MMIC also began using "MyAdvice" on its website and in advertising, including as below:[11]



MMIC's "MyAdvice" platform is a mechanism for assembling and presenting a collection of pre-existing education and advisory services to MMIC's policyholders.[12] It is part of a three-pronged marketing infrastructure used to describe the features and services MMIC provides to policyholders: (1) "MyProtection" encompasses the various insurance coverage products; (2) "MyAdvice" encompasses the risk management advice and education services; and (3) "MyDefense" refers to the claims management and legal services.[13] The services offered under the "MyAdvice" mark are not stand-alone products or services.[14] Instead, they are part and

---

[10] ECF No. 32, Ex. C ¶ 9.
[11] *Id.*; ECF No. 10, Ex. 2 ¶ 15.
[12] ECF No. 32, Ex. C ¶ 10.
[13] *Id.* ¶ 11.
[14] *Id.* ¶ 12.

parcel of the services provided to all MMIC policyholders,[15] and thus to gain access to the "MyAdvice" services, a consumer must purchase a medical malpractice insurance policy, which may cost $15 million or more.[16] Furthermore, while MMIC maintains a website and social media presence, MMIC does not solicit, in general, prospective purchasers from the public at large.[17] MMIC primarily uses the "MyAdvice" mark in communications with—or intended for—existing policyholders,[18] and MMIC only uses its "MyAdvice" mark in close proximity to its MAGMUTUAL registered trademark.[19]

Advice Media initiated this action on December 8, 2025, asserting various federal trademark and unfair competition claims, a state unfair competition claim, and a claim for unjust enrichment.[20] Rather than immediately effectuating service on MMIC, Advice Media sent MMIC a cease-and-desist notice on December 10, 2025.[21] MMIC continued to use the "MyAdvice" mark on its website and in social media posts.[22] And based on a single Google search performed January 30, 2026, MagMutual's "MyAdvice" appeared before Advice Media's, as shown below:[23]



---

[15] *Id.*
[16] *Id.* ¶ 8.
[17] *Id.* ¶ 6–7.
[18] *Id.* ¶ 14.
[19] *Id.* ¶ 13.
[20] ECF No. 1.
[21] ECF No. 10, Ex. 4.
[22] *Id.* Ex. 5.
[23] *Id.*

On February 11, 2026, Advice Media filed the instant Motion for Temporary Restraining Order and for Preliminary Injunction.[24] The Court denied Advice Media's Motion to the extent it sought an ex parte temporary restraining order and ordered that Advice Media effect service upon MMIC.[25] To the extent the Motion sought a preliminary injunction, the Court ordered that the Motion remained pending.[26] On April 8, 2026, MMIC filed its Opposition,[27] to which Advice Media replied on April 22, 2026.[28]

### DISCUSSION

As a threshold matter, the Court notes that Advice Media's Motion is overlength in violation of DUCivR 7-1(a)(4)(C)(i), which provides that such a motion has a limit of twenty-five pages or 7,750 words. Before filing a motion that exceeds these limitations, a party must obtain a court order authorizing the additional pages or words.[29] Advice Media did not seek the Court's approval before filing its overlength Motion and has not attempted to do so retroactively. MMIC asks the Court to issue appropriate sanctions against Advice Media, as the local rules provide that failure to comply may result in the Court imposing sanctions such as the denial of the motion.[30] However, as the language above denotes, the Court's imposition of sanctions under this rule is discretionary rather than mandatory. Although Advice Media has not given an explanation for its failure to abide by the local rules,[31] the Court finds any violation "to be *de*

---

[24] ECF No. 10.

[25] ECF No. 12.

[26] *Id.*

[27] ECF No. 32.

[28] ECF Nos. 34–35. Advice Media filed a Reply, ECF No. 34, and an Amended Reply, ECF No. 35, on the same day. The initial Reply is not signed by counsel, a defect which the Amended Reply remedies. Having been unable to detect any other substantial differences in the filings, the Court, for the sake of clarity, notes that it relies on the Amended Reply. ECF No. 35.

[29] DUCivR 7-1(a)(7)(A).

[30] DUCivR 7-1(j)(2).

[31] Instead, Advice Media points to MMIC's Opposition and argues that it, too, is overlength such that sanctions are appropriate. But MMIC's Opposition appears to comply with the 25-page

*minimis* and unintentional."[32] While the Court admonishes Advice Media to take care to comply with the procedural rules in the future, the Court finds sanctions unnecessary at this time and will address the substance of the instant Motion.

Furthermore, the Court notes that Advice Media has raised several evidentiary objections in its Reply. "[T]he Federal Rules of Evidence do not apply at the preliminary injunction stage[.]"[33] There is thus "no basis" for Advice Media's evidentiary objections in the context of this Motion.[34] As such, the Court will not address the objections in this Order and will, for the purposes of this Motion, consider the evidence submitted.

Turning, then, to the Motion at issue, a party seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must show the following:

> (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.[35]

"The likelihood-of-success and irreparable harm factors are 'the most critical' in the analysis."[36]

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'"[37] Because the remedy is

---

limit.

[32] *Bingham v. doTERRA Int'l, LLC*, No. 2:23-cv-00707-DBB-DBP, 2024 WL 1973342, at *2 (D. Utah May 3, 2024) (declining to strike impermissibly overlength motion).

[33] *Instructure, Inc. v. Canvas Techs., Inc.*, No. 2:21-cv-00454-DAK-CMR, 2022 WL 43829, at *9 n.2 (D. Utah Jan. 5, 2022); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.").

[34] *Crystal Tones, LLC v. Pyromatics Coproration*, No. 2:25-cv-235-DAK, 2025 WL 2962597, at *1 (D. Utah Oct. 20, 2025).

[35] *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)).

[36] *Szymakowski v. Utah High School Activities Ass'n, Inc.*, 756 F. Supp. 3d 1238, 1246–47 (D. Utah 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

[37] *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

"drastic—the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief."[38] Moreover, in the Tenth Circuit, "[c]ertain types of preliminary injunctions are disfavored and require a movant to satisfy a heightened standard."[39] An injunction is disfavored if, for example, "(1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win."[40] "When any of these three characteristics are present, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and balance-of-harms factors: [it] must make a 'strong showing' that these tilt in [its] favor."[41]

Here, the Court finds that Advice Media's requested injunction is mandatory. "[I]njunctions are considered 'mandatory' when they 'affirmatively require' action";[42] injunctions are prohibitory, on the other hand, when "they prohibit the defendant from doing something."[43] While Advice Media seeks to prohibit MMIC's use of the "MyAdvice" mark, this amounts to a mandate that MMIC take affirmative actions such as rebranding its three-pronged infrastructure or developing a new program. This also "places the [Court] in a position where it may have to provide ongoing supervision to assure [MMIC] is abiding by the injunction."[44] Accordingly, Advice Media seeks a disfavored type of preliminary injunction and must make a

---

[38] *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. Dec. 5, 2011) (citing *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2010)).

[39] *State v. U.S. Envt'l Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).

[40] *Szymakowski*, 756 F. Supp. 3d at 1247 (quoting *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)).

[41] *Id.* (citation modified).

[42] *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1275 (10th Cir. 2022*)*; *see Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (characterizing an order to remove content from YouTube as a mandatory injunction because the order required a party to take action).

[43] *Trial Laws. Coll.*, 23 F.4th at 1274.

[44] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (citation modified).

strong showing on the likelihood-of-success and balance-of-harms requirements.[45]

## A.     SUBSTANTIAL LIKELIHOOD OF SUCCESS

Generally, in the Tenth Circuit, "the irreparable harm requirement must be satisfied before the other factors may be considered."[46] However, because the Lanham Act "expressly allow[s] a presumption of irreparable injury when the owner of a trademark proves likelihood of success on the merits[,]"[47] the Court must first address the likelihood-of-success requirement.

Advice Media bases its request for a preliminary injunction on the first four causes of action alleged in its Complaint: (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) unfair competition in violation of 15 U.S.C. § 1125, (3) false association in violation of 15 U.S.C. § 1125, and (4) violation of the Utah Unfair Competition Act. For Advice Media to prevail on its Lanham Act claims for trademark infringement, unfair competition, and false association, Advice Media must show "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers."[48] Similarly, as Advice Media premises its Utah Unfair Competition Act claim on trademark infringement,[49] the claim is dependent on whether Advice Media can meet the elements above. Of the elements, "'the central inquiry' is the likelihood of consumer confusion[,]"[50] and it is this element that is at issue here. Determining the

---

[45] However, even if Advice Media were not subject to the heightened standard, the Court finds that Advice Media's request for an injunction would also fail the less demanding standard.
[46] *Uyte, LLC v. Mammoth Hockey, LLC*, No. 2:25-cv-00639-DBB-CMR, 2025 WL 3872248, at *3 (D. Utah Dec. 23, 2025).
[47] *Trial Laws. Coll.*, 23 F.4th at 1270.
[48] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (citation modified).
[49] Under the Act, "unfair competition" is defined as "an intentional business act or practice that . . . is one of the following . . . infringement of a patent, trademark, or trade name[.]" Utah Code Ann. § 13-5a-102(4)(a).
[50] *Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1240 (D. Utah 2020) (quoting *Beltronics USA, Inc.*, 562 F.3d at 1071).

likelihood of confusion involves inquiry into the following six factors:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. [51]

"These factors are interrelated and no one factor is dispositive."[52]

### 1.        The Degree of Similarity Between the Marks

"[T]he degree of similarity of two marks is tested on three levels as encountered in the marketplace: sight, sound, and meaning."[53] "In considering the characteristics of the marks, similarities weigh more heavily than differences."[54] "In evaluating similarity, the court must not engage in a side-by-side comparison."[55] Instead, "the court must determine whether the alleged infringing mark will be confusing to the public when singly presented."[56]

While Advice Media asserts that the marks at issue are identical in sight, sound, and meaning, the reality is not so simple. Both parties employ the mark at times to appear as "MyAdvice" in a standard font, but there are also significant differences in the overall design of the parties' branding. [57] On Advice Media's website, Advice Media's mark appears in all lowercase letters beside a distinctive logo design. Advice Media's mark also appears beside this logo design on the proffered web search. MMIC's mark, on the other hand, appears in all capitalized letters beside a distinctive logo design. The two parties' logo designs are entirely

---

[51] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).
[52] *Id.*
[53] *Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F. Supp. 1438, 1448 (D. Kan. 1995) (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983)).
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *See W.W.W. Pharmaceutical Co. Inc. v. The Gillette Co.*, 984 F.2d 567, 573 (2d Cir.1993) (finding that differences in product sizes, logos, typeface and package designs created "dissimilar modes of presentation" that made confusion less likely).

dissimilar. Furthermore, MMIC's "MAGMUTUAL" mark is prominently displayed either closely above or below its "MyAdvice" mark, thus clearly identifying the source.[58] Given these differences, while the marks are closely similar, they are not confusingly similar, and this factor weighs against a likelihood of confusion.

### 2.    The Intent of the Alleged Infringer

"Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[59] "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or good will of plaintiff."[60]

Here, Advice Media has failed to offer proof that MMIC chose to use the "MyAdvice" mark with the intent to derive benefit from Advice Media's reputation or good will. Advice Media claims that the similarity of the marks gives rise to a reasonable inference that MMIC wanted to copy Advice Media, but there is no indication that MMIC was even aware of Advice Media's existence prior to the cease-and-desist notice. MMIC and Advice Media are not competitors and are in separate industries—the former being an insurance company and the latter being a technology and marketing company—and there is no indication that Advice Media has gained good will among the insurance industry and its respective consumers such that MMIC would have any incentive to attempt to derive benefit from that good will. And while MMIC was made aware of Advice Media's trademark rights with the cease-and-desist notice, "mere

---

[58] *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981) ("We and other courts have indicated that in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with clearly displayed name and/or logo of the manufacturer.").

[59] *Sally Beauty Co.*, 304 F.3d at 973.

[60] *Id.*

knowledge of the mark . . . is not decisive."[61] Thus, an inference of likelihood of confusion cannot be justified from this factor alone.

### 3.    Evidence of Actual Confusion

"The best evidence of likelihood of confusion in the marketplace is actual confusion[,]" but "the absence of evidence of actual confusion does not necessarily mandate a finding that there exists no likelihood of confusion."[62] "Where the products sold by the parties have been available contemporaneously for only a short time, evidence of actual confusion is particularly apt to be unavailable and its absence under such circumstances is understandable and especially unimportant."[63]

No evidence of actual confusion has been proffered. Nonetheless, as the parties' services have only been contemporaneously available for a few months, it is possible that there has not been sufficient time for evidence of such confusion to develop. Accordingly, here, "evidence of the actual confusion factor has little probative value in assessing likelihood of confusion in the marketplace[,]"[64] and this factor is neutral.

### 4.    Similarity of Products and Manner of Marketing

"The greater the similarity between the products, the greater the likelihood of confusion."[65] "The issue is not whether the goods and services can be distinguished from each other in some aspect, but instead it is whether consumers would believe that one entity produced both."[66]

MMIC is a medical malpractice insurance company, and its "MyAdvice" service is a risk

---

[61] *Packerware Corp.*, 895 F. Supp. at 1450.
[62] *Id.* at 1451.
[63] *Id.*
[64] *Id.*
[65] *Sally Beauty Co.*, 304 F.3d at 974 (citation modified).
[66] *Instructure, Inc.*, 2022 WL 43829, at *12.

consultancy and advice delivery platform designed to help healthcare providers reduce malpractice exposure and improve patient outcomes. It is part of a three-prong infrastructure, MyProtection/MyAdvice/MyDefense, available to policy holders. Advice Media is a technology and marketing company, and its MYADVICE service is an AI-driven marketing and business management system and includes website development, search optimization, digital advertising, content creation, and other related marketing solutions. While these services are similar at an abstract level in that they both involve advisement, the services offer advisement on entirely different subjects: malpractice risk management and digital marketing. And while there may be some overlap in consumers in that both companies serve medical providers,[67] the companies are not competitors within the same industry. Again, MMIC is an insurance company, and Advice Media is a technology and marketing company. It seems unlikely that consumers would think that a medical malpractice insurance company was going to advise them on website development and search optimization. Inversely, it seems unlikely that consumers would think that a technology and marketing company was going to advise them on medical malpractice risk management, particularly given the highly regulated nature of the insurance industry.

Moreover, while both services are marketed, at least in part, via the internet and social media, as well as through direct outreach to the medical industry, the Court finds it significant that MMIC's risk management advisory services under the "MyAdvice" mark are only available to policyholders as part and parcel of their medical malpractice insurance coverage. In other words, MMIC's "MyAdvice" service is not available as a standalone product, and MMIC primarily uses the "MyAdvice" mark in communications with—or intended for—existing

---

[67] Although Advice Media places particular emphasis on its serving the medical industry in an attempt to establish likelihood of confusion, it appears that Advice Media serves other industries as well. Thus, Advice Media's consumer base is broader than that of MMIC, which is limited to the medical industry.

policyholders who would already be familiar with MMIC. Unlike Advice Media, whose website is a primary vehicle through which prospective purchasers engage with the company, MMIC generally does not solicit prospective purchasers from the public at large.

Overall, given the different nature of the services at issue, it seems unlikely that a consumer would think that one entity produced both. This factor thus weighs against a likelihood of confusion.

### 5.    The Degree of Care Likely to be Exercised by Purchasers

With respect to the degree of care likely to be exercised by purchasers, "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone."[68] "The greater the value of an article, the more careful the typical consumer can be expected to be."[69]

Both Advice Media and MMIC's services associated with the marks at issue are ones that purchasers likely exercise a substantial degree of care in buying. MMIC's service is not a stand-alone product available to consumers. Rather, it is part of a parcel of services available to medical malpractice insurance policyholders. Thus, in order to gain access to MMIC's "MyAdvice" service, a consumer would need to obtain a medical malpractice insurance policy. Such policies may cost $15 million or more[70] and are not purchased on a whim—those seeking coverage likely consult with several providers to obtain quotes and compare coverage offerings. Advice Media, on the other hand, offers AI-driven marketing and business management services under the MYADVICE mark, including website development, search optimization, digital

---

[68] *Beer Nuts Inc.*, 711 F.2d at 941.
[69] *M Welles & Assocs., Inc. v. Edwell, Inc.*, 59 F.4th 723, 735 (10th Cir. 2023) (citation modified).
[70] ECF No. 32, Ex. C ¶ 8.

advertising, content creation, and other related marketing solutions. Although it is unclear how much Advice Media's services cost, it does not seem that a business seeking to invest in such services would do so without careful consideration of its options. In sum, the high degree of care likely to be exercised by purchasers weighs against a likelihood of confusion.

### 6.      The Strength or Weakness of the Mark

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."[71] The strength of a mark is assessed with respect to two aspects: "conceptual strength, or the mark's place on the spectrum of distinctiveness; and commercial strength, or its level of recognition in the marketplace."[72] There are five categories on the spectrum of distinctiveness relating to conceptual strength: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful."[73] "A mark is descriptive if it describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put."[74] "A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services]."[75]

With respect to conceptual strength, Advice Media's MYADVICE mark is best described as suggestive, as it suggests that a consumer who engages with Advice Media's services will be obtaining some form of advisement. However, if a consumer did not have knowledge that Advice Media provided digital marketing services, a consumer would have difficulty ascertaining the exact nature of the services from the MYADVICE mark alone. As for

---

[71] *Sally Beauty Co.*, 304 F.3d at 975.
[72] *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1007 (10th Cir. 2014).
[73] *Id.*
[74] *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (alterations in original).
[75] *Id.* (alterations in original).

commercial strength, although Advice Media has submitted evidence of its success and growing clientele in general, Advice Media and MMIC operate in different industries. While both companies cater at least in part to medical providers and even assuming that Advice Media has achieved some commercial strength in the market for digital marketing services over the short period of time for which it has used the mark, Advice Media has failed to offer any evidence that it has recognition related to the insurance industry such that a consumer shopping for medical malpractice insurance would experience confusion as to the origin of the services upon encountering MMIC's "MyAdvice." Thus, overall, MYADVICE is a relatively weak mark in the applicable context, and this factor weighs against a likelihood of confusion.

### 7.     Synthesis and Conclusion

None of the above factors are dispositive. However, on balance, the Court finds that, based on the material presented, the factors weigh against a likelihood of confusion, particularly given the stark differences in the parties' services and the high degree of care likely to be exercised by consumers. As such, having "closely scrutinized" the likelihood-of-success element,[76] Advice Media has not made a strong showing of a substantial likelihood of success on the merits of its relevant claims. Indeed, even if not held to the heightened standard, Advice Media has not established a substantial likelihood of success at this juncture.

Because Advice Media has not established that it is substantially likely to succeed on its relevant claims, the Lanham Act's presumption of irreparable injury is inapplicable. More critically, because Advice Media has not established that it is substantially likely to succeed on its relevant claims, it cannot prevail on its Motion for Preliminary Injunction. The Court will,

---

[76] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) ("[C]ourts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.").

therefore, deny Advice Media's request for a preliminary injunction and need not address the remaining elements.[77]

## <u>ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 10) is DENIED.

DATED this 11th day of May 2026.          BY THE COURT:

Ann Marie McIff Allen
United States District Judge

---

[77] *See Village of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished) ("[A] plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted."); *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (unpublished) ("A party seeking a preliminary injunction must prove that *all four* of the equitable factors weigh in its favor[.]" (emphasis in original)).